# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JAMES DAVID OFELDT,

    Petitioner,

vs.

DIRECTOR, NDOC, *et al.*,

    Respondents.

3:10-cv-00646-LRH-VPC

**ORDER**

This is an action on a petition for writ of habeas corpus filed by James Ofeldt, who is currently represented by CJA counsel. Pending before this Court is respondents' Motion to Dismiss Petition (ECF No. 52), which has been fully briefed by the parties.

**I.  Procedural History**

This action involves two separate criminal convictions obtained against the petitioner; one which was initiated in Sparks, Nevada ("Sparks case"), case number CR04-0649B, and one initiated in Reno, Nevada ("Reno case"), case number CR03-2701C. Both cases resulted in convictions in the Second Judicial District Court of Washoe County, Nevada. Under the rules governing habeas cases, these two cases may arguably be attacked in a single federal action because they arise from judgments of one state court. Rule 2(e), Rules Governing Section 2254 Cases.

Petitioner was convicted in the Sparks case on July 1, 2004, following a jury trial of robbery with the use of a deadly weapon, burglary, and conspiracy to commit robbery with the use of a

///

///

deadly weapon. Exhibit (Ex.) 140.[1] Petitioner was convicted pursuant to a guilty plea in the Reno case on February 1, 2005. He pled guilty to eight counts of robbery with the use of a firearm. Ex. 23. The post-judgment procedural histories of the separate cases are discussed below as they relate to the arguments and defenses raised in the motion to dismiss. It is sufficient to note that petitioner made various attempts to attack his convictions in the state courts. The instant federal action was commenced on October 14, 2010. The original petition notes that petitioner handed his petition to prison officials for mailing on October 11, 2010. ECF. No. 6, p. 1, Item 5.

## II.     Motion to Dismiss

Respondents argue that this federal petition is untimely and should be dismissed. They further argue that certain claims are unexhausted and that others are procedurally barred.[2] Petitioner opposes the motion.

### A.     Timeliness

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year statute of limitations on the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d). The one year time limitation runs from the date on which a petitioner's judgment becomes final by conclusion of direct review, or upon the expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A). The Ninth Circuit Court of Appeals has held that the "time for seeking direct review" under 28 U.S.C. §2244(d)(1)(A) includes the ninety-day period within which a petitioner who was unsuccessful on direct appeal can file a petition for a writ of certiorari from the United States Supreme Court under Supreme Court Rule 13, whether or not the petitioner actually files such a petition. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).

---

[1] The exhibits referenced in this order were submitted by respondents in support of their motion to dismiss and are found in the Court's docket at ECF Nos. 53-62, unless otherwise identified. Although counsel for petitioner provided exhibits in support of the petition, *see* ECF Nos. 46-49, those exhibits were not filed in compliance with the Court's order requiring an index of exhibits and individual numbers and tabs to differentiate the individual documents in the file.

[2] Respondents also argue that the petition should be dismissed because petitioner failed to meet certain requirements as to the form of the petition and the supporting record. Those arguments have since been withdrawn.

2

A properly filed petition for state post-conviction relief can toll the period of limitations. 28 U.S.C. § 2244(d)(2). The triggering date for the recommencement of the AEDPA limitations period after post-conviction review is the Nevada Supreme Court's *issuance* of the remittitur, rather than the date it is received in the district court, or filed in the Nevada Supreme Court. *Duncan v. Walker,* 533 U.S. 167, 178, 121 S.Ct. 2120 (2001); *see Gonzales v. State of Nevada*, 118 Nev. 590, 53 P.3d 901, 901-03 (2002); *see also Glauner v. State*, 107 Nev. 482, 813 P.2d 1001 (1991).

      1.    *The Reno Case*

Petitioner pled guilty and was sentenced in this action on February 1, 2005. Ex. 24. The Judgment of Conviction was entered that same day. Ex. 23. Petitioner did not appeal this conviction and it became final on March 3, 2005, when the thirty days to file an appeal expired. 28 U.S.C. § 2244(d)(1)(A). He filed a petition for a writ of habeas corpus in state court on January 31, 2007. Ex. 27. That petition was dismissed by the state court on April 25, 2007, as untimely filed; notice of which was served on May 24, 2007. Ex. 29. Petitioner appealed the dismissal (ex. 30), and the Nevada Supreme Court affirmed the lower court on February 13, 2008. Ex. 42. Remittitur issued on March 11, 2008, concluding those post-conviction proceedings. Ex. 43.

Petitioner immediately commenced a second post-conviction proceeding, alleging a "Brady Claim." Ex. 49. The timeliness of this proceeding was, apparently, not raised as a defense and counsel was appointed to assist petitioner. Ex.57.[3] While the original *pro se* petition was not supplemented, counsel ultimately filed a motion to withdraw guilty plea. Ex. 68. In the meanwhile, petitioner continued in his pro per attempts to obtain relief by filing a motion to vacate an illegal sentence (ex. 65) and a petition for a "peremptory writ of mandamus" with the Nevada Supreme Court (ex. 70). These efforts proved unsuccessful. *See* Exhibit 76, Order Denying Petition; Exhibit 80, Order Denying Defendant's Motion to Vacate Illegal Conviction. Although the motion to withdraw the guilty plea was given an evidentiary hearing (ex. 93), that motion was also unsuccessful. Exs. 100 and 107. Thus, petitioner's efforts to obtain post-conviction relief in the

---

[3] The original counsel apparently developed a conflict with petitioner and substitute counsel was appointed. Ex. 67.

3

Reno case ended March 23, 2012, when the remittitur issued in the appeal. Ex. 108.

Although the state post-conviction proceedings in the Reno case lasted from early 2007 until March of 2012, the one-year limitations period had already expired on March 3, 2005, before the original post-conviction petition was filed. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir.2003) ("[S]ection 2254 does not permit the reinitiation of the limitation period that has ended before the state petition was filed"); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir.2001) (stating that filing of state petition after AEDPA's one-year time period has elapsed bars federal habeas review); *Green v. White*, 223 F.3d 1001, 1003 (9th Cir.2001); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir.2000) ("A state-court petition [ ] that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled"). The filing date for the instant petition was 668 days after petitioner's conviction became final. *See* exs. 23, 27 and 43. Thus, this petition must be dismissed absent a showing by the petitioner that he is entitled to tolling of that one-year period.

        2.    *The Sparks Case*

Petitioner represented himself and was convicted in the Sparks case after a jury trial which culminated on July 1, 2004. Ex. 140. The appeal of this conviction resulted in an Order of Affirmance issued by the Nevada Supreme Court on March 24, 2006. Ex. 163. Including the 90-day period allowed for seeking certiorari from the United States Supreme Court, the conviction became final on June 22, 2006. The AEDPA one-year limitations period commenced the following day. A post-conviction petition was filed by petitioner in the state court on May 10, 2007, expiring a total of 322 days. Unfortunately for petitioner, that post-conviction petition was ultimately dismissed by the state court as untimely under Nevada law; a decision upheld by the Nevada Supreme Court. Exs. 171 and 187.

Ordinarily, the time during which the May 10, 2007 post-conviction petition was pending before the state court would be statutorily tolled and not count against the one-year period. However, the AEDPA provides for tolling only while a "properly filed" application for state post-conviction or other collateral review is pending. 28 U.S.C. § 2244(d). The United States Supreme Court has determined that a state post-conviction petition that is found to be untimely by the state

4

court is not considered "properly filed," *Pace v. DiGuglielmo,* 544 U.S. 408, 417 (2005). Such a petition would not, therefore, toll the statute of limitations under 28 U.S.C. § 2244(d). *Allen v. Siebert,* 552 U.S. 3, 6, 128 S.Ct. 2, 4 (2007); *Evans v. Chavis*, 546 U.S. 189, 194, 126 S.Ct. 846, 850 (2006); *Lakey v.. Hickman*, 633 F.3d 782, 786 (9th Cir.), *cert. denied*, ––– U.S. ––––, 131 S.Ct. 3039, 180 L.Ed.2d 858 (2011); *Banjo v. Ayers*, 614 F.3d 964, 968 (9th Cir.2010), *cert. denied*, ––– U.S. ––––, 131 S.Ct. 3023, 180 L.Ed.2d 844 (2011); *White v. Martel*, 601 F.3d 882, 883–84 (9th Cir.), *cert. denied*, ––– U.S. ––––, 131 S.Ct. 332, 178 L.Ed.2d 146 (2010).   Thus, petitioner's one-year clock continued to run despite the filing of his original post-conviction petition in the Sparks case. It expired well before he commenced his second post-conviction action on June 23, 2009.

Petitioner continued to pursue collateral review of his conviction in the state court through a second petition, commenced on June 23, 2009. Exs. 189-191*;* Ex. 193, Petition for Writ of Habeas Corpus (Post Conviction); Memorandum in Support. In that action, petitioner was appointed counsel, ex. 195, although the record provided does not include a notice of appearance by counsel and all subsequent motions and other documents filed on behalf of petitioner were filed by petitioner in pro per. *See e.g.,* exs. 196, 197, 200, 204.  As he had in the Reno case, petitioner filed a motion to vacate an illegal sentence in this action. Ex. 196.  That motion was ultimately briefed by the parties, with petitioner proceeding in proper person. It was denied by the state court. Ex. 205.[4]  Petitioner appealed that decision, ex. 206, and the Nevada Supreme Court affirmed the lower court's denial. Ex. 217.

In December of 2010, the state court ordered counsel to set an evidentiary hearing on a "Motion to Withdraw Guilty Plea, filed by Petitioner ... on May 6, 2010."[5]  Ex. 215. The order identified that motion "as part of Petitioner's post conviction proceedings." *Id.* Nothing further

---

[4] It appears that appointed counsel never made an appearance on record in this action, despite an order issued by the court directing the counsel for the parties to set a status conference regarding the supplemental petition that petitioner had attempted to file. Ex. 199. It also appears that the court overlooked this order and its previous order appointing counsel, because it later required the state to respond to petitioner's proper person motion to vacate an illegal sentence. Ex. 201.

[5] It appears to the Court that this order references the Motion to Withdraw Guilty Plea that was filed by counsel in petitioner's Reno case. This motion does not appear in the record of the Sparks proceedings.

5

related to this motion or an evidentiary hearing appears in the record of the Sparks case.

The post-conviction proceedings in the Sparks case did not toll the statute of limitations and the instant petition filed pursuant to 28 U.S.C. § 2254 must be dismissed unless petitioner can demonstrate that he is entitled to equitable tolling of that period.

Petitioner's arguments for equitable tolling are made in support of both convictions and are discussed as one below.

B.   Equitable Tolling

*Tillema v. Long*, 253 F.3d 494 (9th Cir. 2001) provides the basic law governing equitable tolling of the AEDPA statute of limitations:

> As we have previously held, "[w]hen external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute may be appropriate." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999); *see also Calderon v. United States Dist. Court (Kelly)*, 128 F.3d 1283, 1288-89 (9th Cir. 1997), overruled on other grounds by *Calderon v. United States Dist. Court*, 163 F.3d 530 (9th Cir. 1998) (*en banc*) (petitioner entitled to equitable tolling where petitioner's counsel withdrew and left replacement counsel with unusable work product that made timely filing impossible); *Kelly*, 163 F.3d at 541-42 (petitioner entitled to equitable tolling because the district court ordered a stay preventing petitioner's counsel from filing a timely habeas petition and because petitioner was allegedly mentally incompetent).

*Tillema*, 253 F.3d at 504; *see also Holland v. Florida*, 130 S.Ct. 2549, 2562-63 (2010).

The Ninth Circuit Court of Appeals has made clear that equitable tolling is available in very limited cases. *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002); *Miles v. Prunty*, 187 F.3d at 1107. A petitioner may benefit from equitable tolling only "if extraordinary circumstances beyond [his] control make it *impossible* to file a petition on time." *Miranda*, 292 F.3d at 1066 (quoting *Calderon v. United Stated Dist. Court (Beeler)*, 1289 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other grounds by *Kelly*, 163 F.3d 530)(emphasis in original). "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Miranda*, 292 F.3d at 1066 (quoting *United States v. Marcello,* 212 F.3d 1005, 1010 (7th Cir.), *cert.* denied, 531 U.S. 878 (2000)).

Petitioner offers several arguments in support of his claim that he is entitled to equitable tolling. In addition to his preliminary arguments that he is entitled to the "presumption of equitable

6

tolling," he contends that his petition should be found timely because he did not learn about the *Brady* violations until after the time to file the state post-conviction petition had expired, because he "did not know how to file the motions and had no way of learning," and because his mental illness "affected his ability to understand and appreciate the nature of the proceedings," including the jury trial where he represented himself and the subsequent habeas proceedings.[6]

Initially, the Court notes that there is no "presumption of equitable tolling," at least as the Court reads petitioner's argument. Rather, there is a presumption that equitable tolling is available under the proper circumstances or "in appropriate cases." *See Lee v. Lampert,* 653 F.3d 929, 933 (9th Cir. 2011) *citing Holland v. Florida,* 130 S.Ct. 2549, 2560 (2010). As *Holland* explained, the AEDPA's statute of limitations is not jurisdictional; meaning that the expiration of the limitations period does not automatically divest the court of jurisdiction to hear the matter. *Id. citing Day v. McDonough,* 547 U.S. 198, 208, 126 S.Ctr. 1675 (2006) (SCALIA, J., dissenting). In cases where equitable tolling is appropriate, the petitioner will have shown "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," preventing timely filing. *Holland,* 130 S.Ct. at 2562, *citing Pace*, 544 U.S. at 418, 125 S.Ct. 1807 (emphasis deleted). Petitioner will be required to make such a showing in these proceedings in order to qualify for equitable tolling under the AEDPA.

Petitioner also implies that the expiration of the AEDPA's limitations period is irrelevant because the state court addressed the merits of his motion to withdraw the guilty plea. This suggestion is untenable. The question here is not exhaustion, but timeliness. The tolling provision of section 2244(d)(2) can only pause a clock not yet fully run; it cannot "revive" the limitations period once it has run. *See Ferguson*, 321 F.3d at 823; *Jiminez*, 276 F.3d at 482; *Webster*, 199 F.3d at 1259.

With these preliminary understandings in mind, the Court considers petitioner's arguments for equitable tolling.

///

---

[6] Petitioner also suggests in a different footnote that he "hired" another inmate to prepare his state petitions, but that inmate "did not have Ofeldt's interest at heart" in writing the petitions, as evidenced by the inmates agreement to testify against petitioner in "another matter." Petitioner also asserts ignorance of his appeal rights in the Reno case in which he pled guilty. Opposition, p. 6, ns.1 and 2.

7

1. *Extraordinary Circumstances Beyond Petitioner's Control*

    a. <u>Mental Impairment</u>

If a petitioner can show a mental impairment so severe that he was unable to personally understand the need to timely file a habeas petition or even the need to prepare the petition for filing, and that, despite his diligence, his mental impairment made it impossible under the totality of the circumstances to meet the filing deadline, he may be entitled to equitable tolling. *Bills v. Clark*, 628 F.3d 1092, 1093 (9th Cir. 2010).

*Bill's* formulation requires the court to:

> 1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment *during the filing period* that would entitle him to an evidentiary hearing;
>
> 2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired;
>
> 3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and
>
> 4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements.

*Bills*, 628 F.3d at 1100-01 (emphasis added).

Petitioner sought, and this Court granted, leave to subpoena documents related to petitioner's history of mental illness by obtaining his medical records. ECF Nos. 25 and 26. He asserts that he was diagnosed as mentally impaired, "including organic brain damage, prior to the time he was charged and convicted in either the Reno or Sparks" case. Opposition, p. 12. These issues of oppositional behaviors and anger management concerns were initially recognized at the time petitioner was approximately 9 ½ years old. *Id.*, Ex. 5 to Opposition.

Petitioner argues that his mental impairments and diagnoses, such as ADD, ADHD,[7] and borderline personality disorder, combined to hinder his ability to understand the magnitude and significance of representing himself in the underlying criminal proceedings, and to understand the

---

[7] "ADD [Attentional Deficit Disorder or ADHD (attentional deficit hyperactivity disorder)] is a neurological syndrome whose classic defining triad of symptoms include impulsivity, distractibility, and hyperactivity or excess energy." Hallowell, Edward M., M.D. & Ratey, John J., M.D., <u>Driven to Distraction: Recognizing and Coping with Attention Deficit Disorder from Childhood through Adulthood</u> 269 (1995).

various issues that resulted and which have been raised in Ofeldt's habeas efforts.

Petitioner's arguments seem to be that, because of his mental impairment, he did not know he had claims which could be brought to the courts to attack the constitutionality of his conviction - an issue of ignorance, rather than mental incapacity. He does not suggest that he was so mentally disturbed or out-of-touch with reality that he was unable to discuss his case with others or research potential issues in the law library. Attention Deficit Disorder or Hyperactivity conditions would not seem to be a mental impairment so severe that it made it impossible, "under the totality of the circumstances," to file a timely petition as the law requires. *Bills*, 628 F.3d at 1093. Being impulsive or distractable would not necessarily prevent an individual from gaining enough information to know he had claims he might use to attack his conviction.

Petitioner's evidence and arguments also fail to directly address the period of time during which the statute of limitations ran; the period between March 3, 2005 and March 3, 2006, for the Reno case and between June 22, 2006 and June 22, 2007, for the Sparks case. He has provided no evidence of how his mental impairment impacted him during those periods of time. He offers no suggestion that he was hospitalized or on debilitating medications that would render him unable to understand the need to pursue further review. *See Bills*, 628 F.3d at 1100. In sum, petitioner has not demonstrated that he had a mental impairment *during that particular period of time* which made it impossible to pursue his post-conviction remedies or his habeas remedies in this Court. Evidence of a diagnosis of some mental impairment made in 1993 when the petitioner was nine years old does not adequately demonstrate an ongoing inability to understand and pursue his post-conviction remedies in 2006 and 2007. Petitioner fails in the first step of the *Bills* analysis. However, considering the significant mental impairments with which petitioner has been diagnosed, which appear to be ongoing rather than episodic, the Court finds it prudent to also consider his diligence in pursuit of his remedies during the limitations period.

2.   *Diligence*

The due diligence determination by the court in an equitable tolling review is to be objective. But this objective view may be tempered by consideration of the petitioner's particular circumstances. *Ford,* 683 F.3d 1230 *citing Wood v. Spencer*, 487 F.3d 1, 5 (1st Cir.2007) (holding

9

that due diligence under § 2244(d)(1)(D) is an objective test); *Schlueter*, 384 F.3d at 75 (considering petitioner's physical confinement and familial assistance in determining due diligence); *see also Moore v. Knight*, 368 F.3d 936, 940 (7th Cir.2004) (taking into account that prisoners are limited by their physical confinement in determining due diligence); *Easterwood v. Champion*, 213 F.3d 1321, 1323 (10th Cir.2000) (holding that a case is "discoverable" by "due diligence" on the date it becomes accessible in the prison law library, rather than the date of publication); *Starns v. Andrews*, 524 F.3d 612, 619 (5th Cir.2008) (holding that a petitioner did not fail to act with due diligence given the state's misleading suggestion).

Petitioner argues that "after learning that he had an avenue down which he could pursue post-conviction relief, [he] has diligently pursued his rights." Although he does not state as much, petitioner apparently did not learn of this avenue until well after his one-year limitation period had expired. When the factual predicate of a claim "could have been discovered through the exercise of due diligence," the statute of limitations begins to run. *Ford. v. Gonzalez,* 683 F.3d 1230, 1235 (9th Cir. 2012); *Easterwood,* 213 F.3d at 1323. It is not when the fact is actually discovered by the petitioner. *Id.*; *accord Schlueter v. Varner,* 384 F.3d 69, 74 (3d Cir. 2004).

Petitioner does not make clear whether it was the facts supporting his *Brady* [8] claim or his discovery of the concept set forth in *Brady*–that the state is required to provide a defendant with any exculpatory evidence that it may know of or possess that is material to the defense–which prompted his untimely post-conviction petition. Neither argument will save his petition, however.

First, as alleged in his state petition, petitioner filed his first post-conviction petition as soon as he became aware of his *Brady* claims. Ex. 27, item 18 ("The reason these grounds were not previously presented is because I did not know I have the right to discovery this vast."); item 19 ("The reason I am filing this after one year is that I did not know of Brady violation. I am not learned in law and just learned about a Brady violation. I apologize for the delay.").

While these statements informed the state court that he had recently learned of the facts necessary to support a *Brady* claim, or perhaps the notion that such a claim exists, it does not identify

---

[8] *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196 (1963).

what steps he took to make his discovery during the time the limitations clock was running.  Neither does he suggest that the resources required to make the discovery were unavailable until the time he filed his state petition.  Based on the claims raised in the second state post-conviction petition, the facts of the claim were available to him from the time of his trial, when he received the police reports mentioning photos, VHS tapes, print cards or lab results which were referenced in the reports, but purportedly not produced by the state.  *See* Ex. 27, p. 5.  Without an explanation of his efforts during the initial one-year period, petitioner has not demonstrated due diligence in pursuing his claims.

Petitioner also makes a footnote reference to the ineffective paid assistance of an inmate writ writer, (Opposition, p. 6, n. 1), and avers in another footnote that he was not notified of the finalization of his direct appeal in the Sparks case and that inmates are not afforded access to the internet in order to check the court's docket. *Id.*, at 10, n 5.  He acknowledges that he could have written to the Nevada Supreme Court to inquire about the status "every week, month, year which he little could afford to do and which he should not have to do when represented by counsel." *Id.*  He does not say that he did write letters or make inquiries of his counsel, he merely notes that he could have.  Based on these facts, the Court is not convinced that petitioner exercised due diligence in attempting to obtain information about the status of his appeal in order to file his post-conviction petition in a timely manner.

Finally, in that same footnote, petitioner suggests that any attempt to ask other inmates for assistance would have endangered him or been unlikely to have resulted in assistance, because he is not a member of a prison gang.  *Id.*  This assertion is belied by petitioner's own representations that he actually hired another inmate to write the petition for him.  *See* Opposition, p. 6, n. 1. This course of action required that petitioner ask another inmate for assistance, despite his representations that he could not or that the request would be denied.  It is not clear, however, when this assistance was sought or obtained.

Although the record demonstrates that petitioner had the ability to, and did, pursue his state court remedies *after* he "discovered" his *Brady* claims, he has not demonstrated the requisite diligence for the period of time during which the one-year limitation period expired. And, as observed *supra.*, he has not shown that any mental impairment actually prevented him from filing his

11

petition earlier.

## III. Conclusion

The petition must be dismissed as untimely filed. Petitioner has failed to provide the requisite showing that some extraordinary circumstance beyond his control prevented him from filing the petition in a timely manner despite diligent efforts on his part. He is not entitled to equitable tolling of the one-year limitations period imposed under 28 U.S.C. § 2244(d). Because the expiration of the limitations period is fatal to the petition, respondents' remaining arguments need not be addressed.

## IV. Certificate of Appealability

Should petitioner wish to appeal this decision, he must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Rule 11(a). This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that the question of whether petitioner is entitled to equitable tolling of the statute of limitations due to petitioner's mental health issues meets the standard. The Court will therefore grant petitioner a certificate of appealability on that issue.

**IT IS THEREFORE ORDERED** that respondents' Motion to Dismiss (EFC No. 52) is **GRANTED.** The First Amended Petition is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **GRANTED** on the issue of whether petitioner is entitled to equitable tolling of the statute of limitations.

The Clerk shall enter judgment accordingly.

Dated this 5th day of July, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE